Court is calling case number 4-24-1380 Pippo v. Cookson with counsel for the appellant Please state your appearance and for the appellee. You may proceed with your argument counsel. May it please the court, my name is Samuel Steinberg and I represent Michael Cookson due to the recordings of, due to the fact that these proceedings are being recorded I will not use the name of Cookson's son. I recognize that these are sensitive procedures, sensitive subject. However, even though, even though the child was injured, in this case Cookson was denied his Sixth Amendment right to effective and conflict free counsel before, during, and after trial. In accordance with the arguments in our briefs, we will be asking that this court either revamp for a new trial or order further post-conviction proceedings, post-trial proceedings with the assistance of new counsel. And that includes critical proceedings or arguments on the motion for new trial. My plan is to address to you our issues as they appear in the brief, unless this court would like to go, would like to start with a specific topic. Our first issue is that the key issue in this case, the key jury question, was the knowledge element of aggravated battery. And the jury asked a question on the definition of knowledge. Trial counsel here was ineffective for failing to request a standard IPI definition of knowledge. It is, as established by case law, such as Lubbers, Lowery, and Sperry, when a jury asks a question for a definition of knowledge, we have IPI, the IPI jury instruction, specifically to clarify and answer the jury's question. That was not done. And in this case, the critical issue, the answer to that critical issue would have helped the jury be aware that a defendant must be consciously aware of the conduct of his conduct and the result of that conduct. And that was the key question in this case. And the state argues in their brief that this was not, the knowledge element was not the crux of this case. However, that argument is contrary to what they argued in the trial court. The state expressly argued that the crux of this case is the knowledge element. And the defense did not contest aggravated bodily harm, but the defense counsel did contest the element of knowledge on whether Cookson knew about his conduct and knew the result of his conduct. Counsel even recognized, and the jury instruction would have informed the jury that it would have given the answer to this question. This jury instruction was promulgated in 1989 in response to questions about the knowledge element. So would it be fair to state that the main issue in the case was whether the physical evidence, including the interpretation of that evidence by the state's expert, would have been consistent with, we'll call it an accidental injury, as opposed to the state's theory? Can you clarify your question? Isn't really the issue here is that the state had one theory and the defense had another, and it wasn't so much that we were parsing the knowledge part on the defense theory. We were just looking at whether the physical evidence lined up more closely with accident or something greater. The answer to that question is no, partially no and yes. There were two theories presented, the defense through Cookson's testimony and his statements to his family and to Sarah that this was a fall, he was drunk, he picked up his child and fell. However, the state expressly argued that the crux of this case, that's on 1120 of the record, was the knowledge element. And the question is, you know, the jury might have found, may have reached a compromise between the state's version or Cookson's version. But the knowing element was a key question. For example, 1138 of the defense's argument, defense counsel argues, did the state prove beyond a reasonable doubt that Michael not only caused these injuries, not only, period. And I submit to you the answer is no, it did not prove beyond a reasonable doubt. And yes, it was part of defense theory that there was, it was caused by an accident. Cookson's statements and the jury was wrestling with this question. That's why they asked for the definition of knowledge. They don't ask for a definition of knowledge if this is a clear-cut case. In what way was the answer given insufficient in comparison to the IKI version? Okay. So the answer to the jury's question was that the word normally should be given in plain meaning within the jury's common understanding. However, for aggravated battery requires knowledge, not only of the, not only that you committed an act, but also of the result of the act. And when you look at the IPI jury instructions, it defines it both in terms of the prohibited conduct and the result at issue. So the jury would have to find under the IPI instruction a very high standard that my client was consciously aware that he was engaging in conduct and that the result of that conduct would be bodily harm, great bodily harm. After trial, counsel recognized this error. He put it in his motion for new trial. And this leads us to the second issue, which, of course, I want you to agree with the first issue. The first issue is dispositive. It would eliminate the other appellate issues and would also eliminate further trial court proceedings that could take months and then maybe ping-pong before this court. But if this court reaches the second issue, it's that trial counsel had a conflict of interest when he put the IPI jury instruction issue in the motion for new trial and did not zealously make an argument for it. Cases such as Garcia and Brown and Canard established that when counsel recognizes that their error may have caused an error, they're allowed to argue it during post-trial, but they have to zealously argue it. Here, there is no argument. Counsel did not say I'm ineffective. This implicated counsel's ineffectiveness because during the jury instruction conference, we recognized that counsel did agree to it. While the state argues in their answer brief that this defense of counsel raises plain error, under Jones, under the Illinois Supreme Court's decision in Jones, defense agreement to the instruction constitutes invited error, and thus counsel would have to raise it as a claim of ineffective assistance of counsel. Okay. You have raised it here as a question of ineffective assistance? Yes. Correct. There's no preclusion. There's no forfeiture. You can raise it here on the merits, correct? Yes. With the conflict issue, isn't part of the analysis prejudice analysis, meaning was the defendant prejudiced because his counsel labored under an alleged conflict? Yes. So if it's going to be heard here anyway, without regard to what counsel, how emphatically counsel argued or whatever arguments counsel made in post-trial, isn't that by definition not prejudicial because it's getting to the same place, right? No, because it prevents the trial court from first hearing the motion and hearing the motion in its entirety and hearing all arguments and raising it below. Trial counsel, in fact, made no arguments below. Counsel, during the motion for new trial, he raised a different jury instruction issue, I think another issue, and made absolutely no argument about the IPI jury instruction. And that's probably because the trial court would have been like, Mr. Bember, trial counsel, did you agree with this instruction? He would have said yes. Now, there's no strategy why counsel would decide, would have not wanted the jury instruction, when it requires a conscious awareness and other factors, such as in cases such as Sperry and Lovelace. The jury instruction was critical to the jury's understanding of the case. Does it matter, though, that the trial court didn't hear the argument that you think should have been made, if our review is de novo on the same issue? No. If this court determines that prejudice counsel strategy was deficient and prejudice occurred because the jury was not properly instructed and the question on the central element of this case was not answered, especially when there's disputing stories regarding that mens rea element, this court may reverse for a new trial because it would just be judicially inefficient. My specific question was, and I apologize if it wasn't clear, if we're reviewing the question of the conflict de novo because the facts are undisputed, can there be prejudice from the fact that trial counsel didn't present the issue of her own ineffectiveness to the trial court? Yes, because there may be other issues that counsel may not present. That is why generally in cases such as Garcia, we do recognize that the general remedy when the trial court does find conflict during post-trial proceedings is to remand for post-trial proceedings. I do recognize that Garcia does hold that. However, since the first issue is clear, our position is that further proceedings would be unnecessary. If you order a new counsel here for a new trial, then further post-trial proceedings would be a waste of resources. Now, we brought up counsel's performance about during trial and a little bit after trial. But the Krenko issue brings up his performance kind of both during and before trial, or before trial. And the Krenko hearings show this court should reverse if this court decides not to agree with the other one's arguments. This court should reverse for further Krenko proceedings because the Krenko record shows possible neglect for not bringing forth an expert witness or not fully investigating it. This is a case in which our brief has cited cases from Maryland, Michigan, Florida. The medical science for this type of case, for so-called shaken baby cases, is not clear cut. It is very controversial. That is why, in general, in my experience with handling these cases, that the defense usually brings forth another expert to a battle of experts. Counsel, if I may, the defense counsel in this case did state they were unable to locate a medical expert and that there were reasons with respect to the evidence why that ultimately did not pan out. So why shouldn't this court, I guess, equate that with there was not an expert that would testify consistent with the defense's theory of the case? Well, that answer actually raises more questions about what counsel's pre-trial investigation was, what other experts was. Because that answer directly contradicts the fact that Dr. McGraw was hired as a consulting expert, paid about $3,000 in state funds, and we don't know what happened to him during four years of pre-trial discovery. During four years of pre-trial discovery, if you get an expert that might not give a favorable opinion or a doctor who might not give a favorable opinion, you look for other opinions. Just as everyone in law, we all have our opinions on the law. There's lots of medical professionals who have their, medical professionals, scientists, who have their own scientific theories. But medicine and medical science, like law, is not always concrete. And as cases such as the Michigan case starts out and the Florida case, they talk about biomechanic experts. And yes, there's some cross-examination of Dr. Petrak regarding about a rotational fall. And that's what my client testified to. He picked the child up and there was a rotational fall. So just in sports, maybe you play pickleball or you see someone fall on a drop shot and they maybe break their collarbone. But there was no expert testimony presented by that. And Justice Laner, counsel's answer to that wasn't concrete. The answer that would have eliminated possible neglect here would have been like, look, I consulted this doctor. He said this. Then you know what? I'm aware that state funds and the U.S. Supreme Court can say I can go get another expert or look for another expert. Therefore, I contacted another doctor here and I contacted another doctor here. Then I looked at a rotational fall expert because I'm aware that cases such as Michigan and Spurgeon and everything. And the key with CRANCO is that we want to ensure confidence in the outcome. That's why we have further CRANCO proceedings. Isn't it also sort of hinted here but not stated that maybe the expert that he consulted would be damaging to the defense? Certainly not helpful to the defense. And that might explain why he would maybe talk around that a little bit. But can we really look at this on a direct appeal when the record is unclear about whether any of that is true? Well, that's what CRANCO requires. It requires this court's determination and this court's review of whether there was possible neglect. In my brief, I call it a battle of experts. But this wasn't really a battle of experts. This was really just one expert against the naked word of a defense attorney. And the prejudice is shown by the state's closing argument. Does it possible neglect require something in this record indicating that there would be a contrary opinion from an expert? Not just that it wasn't asked by the trial court judge of the attorney as to what the expert said. It requires the fact that there's no expert, the fact that this case was about a rotational fall. There's testimony. There's case law about the need for biomechanics experts regarding that. What if it's not going to help your client? It might help your client. It might not. It might or might not. But you want to know counsel's efforts to obtain and investigate this. In general, counsel is ineffective for failing to conduct a reasonable investigation or to make sure one is not needed. And here we don't know all the steps that counsel did. Four years and you only get one expert? This is what cases such as Quesada required at least to show during the Kranko hearing of consultation with an expert. Here, this court should not have required. There was evidence of a consultation with an expert. What does it have to show about that consultation? What was said were efforts made to obtain a second expert and counsel's knowledge and experience on this issue. And during this Kranko hearing, the judge is seemingly kind of friendly. He mentions that Benbrook has a long time in his courtroom, has known him for, I think, 20 or 30 years. He's kind of helping counsel out. But counsel does not put on record about an expert that would support the theory of a rotational fault. Simply put, the lack of an expert in this case is frowned upon. And I think the Florida case that I cited in my brief puts it very plainly in that statement. The fact that there was no defense expert in that case or an athlete is very problematic. It shakes our confidence in the outcome. Here, because there was possible neglect by counsel for failing to investigate or to explain what Dr. McGraw said on the record. Are you accurately describing Cassata? Because in that case, he never asked for funds to consult an expert. That's a different situation than this one where he did ask for funds. There's an indication made that he received some information from the expert. That's really not the same as Cassata. It is in the respect that, may I continue? No, of course. It is similar because there's that indication from the record that counsel asked for additional funds, for additional investigations of experts, additional continuances to make sure that they had the right expert. If one expert doesn't give the opinion, go to another. Go down the list. How many do you have to ask? That might be a question for another day. I would say probably three, probably five in my book. Isn't it sometimes going to be colored by what you may have learned from the first expert? Yes. Like you've got a loser here? Yes. That might be the word. I'm not saying that's at all what he said. We really don't know, and to Justice Vance's question, don't we have to have more of a record of counsel falling down on what is a presumptively strategic decision? If we want more of that record, that's why we can go back to further CRANCO proceedings. For post-conviction? Yes. Or during post-conviction, but here we're on CRANCO, and CRANCO allows us to develop that record to ensure confidence in the outcome. And that's why Cassata was remanded, and that's why this court should be remanded. Thank you. Thank you, counsel. May it please the Court and counsel, the first issue, the defendant relies heavily on page 1120 of the record with respect to what the prosecutors argued was the, quote, crux of the case, and that refers to one of the elements in the issues instruction for the offense, and that is the defendant knowingly caused great bodily harm to the child. So knowingly is part of that, but the prosecutors were not trying to say that whether the defendant acted knowingly was the crux of the case. They were just simply saying that this element broadly stated was the crux of the case. So therefore, that's not an admission that somehow the state was emphasizing the knowledge or mens rea in this situation. So the actual crux of the case is how the defendant inflicted the injuries to DC. So this distinctive... By a fall versus striking. Yes, violent striking enough to cause such severe injuries they could not have been caused by a fall. That's why this case is distinguishable from the Lowry and Sperry cases relied upon by the defendant most heavily, because those are situations... I wish I could, though, just to clarify. You can follow up with Justice Dougherty's question. I know the focus you've set is on the how, but doesn't the how directly relate to whether it was an intentional act, if you will, or an accident, if you will? Well, isn't it, in fact, one and the same when we're talking about the knowledge element? Well, intent is not really under into it. It's a question of whether it was done knowingly. And so that's why that's the element that has to be proved. And the defendant is saying that he was drunk and he tripped and fell, and that is what caused the injuries. So that would be, if believed by the jury, would be a situation where the jury would say, then he's not guilty if they believe that, because there's no way this jury would have been confused that if you accidentally lose hold of a child and they fall on the carpet, that that's somehow acting knowingly. So there's no sort of confusion here that was in the Lowry and Sperry cases, where the definition would somehow clear up a confusion as to whether, for example, a defendant could accidentally and knowingly discharge a gun, or that they somehow knowingly knew that they had discharged a gun but didn't, like, knowingly discharge a gun. So there was kind of elements of confusion here in the other cases, where here it's just simply asking for the instruction, or asking for a definition, not the instruction, but just asking for a definition. And so when the parties agree that this should be instructed a certain way, then that's why they're arguing in effectiveness because they cannot argue plain error because there is an agreement by the defense attorney to the actual answer that the trial court gave the jury, which means that this is a matter of trial strategy. How the jury is instructed, how the defense wants the jury instructed is a matter of trial strategy. How can it be trial strategy, though, if he didn't even review and reject the specific IPI? Well, I'm not sure if it's a record showing that. They didn't look at the specific IPI that defense counsel is suggesting should have been presented, correct? The court mentions it. The court mentions. But they don't actually ever review it, do they? Any of the attorneys. Well, I'm not sure if the record shows what the attorneys might have known about the IPI without having to stop and actually go look at it again. I mean, the question here is attorneys have to be presumed, strongly presumed under Strickland to have made all these decisions in the exercise of reasonable professional judgment. But if in the record the trial court is the only one that mentions it, and initially the assistant state attorney suggested there's not a definition, then the court brings up there might be one. But there's no suggestion, as in some of the cases that were cited, where it was reviewed and then rejected. How could it be strategic, and how does that not rebut the presumption? Well, we cannot presume that the attorney was ignorant of the instruction. So that's why, in this posture, you have to. Except they were talking about whether there was an IPI instruction. I feel as an officer of the court, that's probably when it would have been incumbent upon counsel to say, well, yes, there is one judge. That's a fair point. Of course, an attorney, as an officer of the court, should do that. But that doesn't mean that if they had not chosen for strategic reasons to realize that the state might not know about it but try to take advantage of the state's ignorance of the IPI. Hiding the ball from the court. You can't write off a strategy. Right. But the point is we cannot presume the defense was ignorant because we don't know whether the defense was actually ignorant or not without anything in the record that shows that they did not know about this. So to presume that this was somehow ignorance and not strategy would be contrary to Strickland. I think the other inference is worse. The inference is that defense was unethical? Yeah, that's a bigger problem. There was a discussion at which if she knew that there was a specific instruction after the judge said, I think there is one, and she didn't mention it, I don't know, that certainly sounds a lot like she didn't know because the other conclusion is worse, that she did know and misled the court. Well, that is a fair point. It's still the cases that the state sites run in where it shows that the lay understanding, the common understanding, could be more onerous on the state to prove than providing the jury with the IPI. And in that situation, because the situation is when you review an attorney's conduct, you're not reviewing whether the defense attorney specifically was ignorant or not. You have to view it from an objective view, which means any reasonably competent attorney would have done the same. So that if every other attorney, I mean, you have to show that every attorney would not have done this. A reasonably competent is not every attorney. I'm sorry, I meant to be more clear here. That every reasonably competent attorney would have, I'm sorry, this is an important point. State my attorney was ignorant of the fact, but if some reasonably competent attorney, any one reasonably competent attorney could have decided to do the same thing, then you cannot argue that it's objectively reasonable for the defense attorney who may have been ignorant, but may have lucked into an objectively reasonable strategy. So you can't just show that my attorney was ignorant. You have to prove that what the attorney actually did was objectively unreasonable. And that's a lot different than saying my attorney didn't know about the IPI. Because if any competent attorney could have said, you know what, on the run-in, commonly my understanding, it's actually more onerous to prove, then maybe we don't want to give the IPI, because that might actually be affirmatively hurting my client. Now, from a defense attorney perspective, so it might be a question whether it's a little bit of an ethical issue in there, whether you have to disclose that to the court or not, but to actually, the argument here is the defense attorney needed to ask for the IPI. That's the defense's claim. Not that the defense shouldn't have just said, oh yeah, there's an IPI, judge, but we're not asking for it. You could have said, but we think it's not necessary. I don't know what the argument is. It's a hard argument against IPI. But the defense attorney could have been, if they knew about the instruction, could have been maybe a little more candor to the court to say, yes, there is an IPI, but we don't want it. It would have been more obvious it was a strategic judgment, but here the presumption has to be in favor of reasonable strategy, particularly in a run-in situation where a lay common understanding of what knowingly means could actually be harder on the state. So why would the defense want to go with that? And that's why their agreement to this answer to the jury question is reasonable. It's objectively reasonable, and the run-in case shows that, because it's better for the defense not to give the IPI instruction. Because I think in this situation when the jury is struggling and it's such a... Whether it's better or not, I think earlier you made the point that it's sort of not the central issue. Is it fair to state that you could have a case with a given state of facts, I don't want to say agreed, but pretty much an understood sequence of events, and there's an issue about knowledge within that sequence. But then you have our case, which is really two different hypotheses about what happened. And one is clearly not intentional, and one seems to suggest intentionality. Isn't that why the instruction isn't critical here? Because we're not talking about finding intent within a known sequence of events, but deciding between an accidental explanation versus an intentional one. That's correct, Your Honor. I would think because the defense attorney would understand, this is such a tough case factually, where there's uncontested expert opinion, who says that this type of severe head injury, bruises on multiple planes, frontal skull fracture not generally seen in falls, and head injury so severe that it wouldn't even happen if he fell out of a two-story building, or if he had been in an unrestrained severe car crash. I mean, the defendant, I think he'd even said it, seemed like he was struck with a sledgehammer. Does that conclusion work against you on the next argument, though? The counsel was ineffective for not meeting that testimony because it's so essential to defeat it in order to prevail? Well, to actually be ineffective, they have to have, for example, like an affidavit from an expert to say, yes, this is something we could have countered with expert testimony. It came to, can I just assume on the basis of this record, that some expert could have been found to have brought that testimony? I think the defendant's perspective is that that's what the Crankle hearing would have unveiled, the answers to those questions. But I think that the Crankle, the defense attorney had said in the Crankle that they did not call the expert because of the evidence. So that's why I think it's pretty obvious that, and the judge was even agreeing with that, saying, yes, the injuries are so severe, essentially, that there's no way they could have, I mean, the judge was agreeing that there's no possibility of finding such an expert in this situation. So your position is that there was an understanding in that discussion about how overwhelming the evidence was and that there wasn't an available expert that could testify? Right, to the specific element of, yes, these injuries could have been caused by simply dropping the child from four and a half feet high onto a soft carpet. To find an actual expert opinion that these particular cluster of injuries and the severity of them could have been produced from that particular incident, as described by the defendant's testimony, that the defense attorney was admitting at that hearing that that was impossible to get an expert to testify to the defendant's testimony as to having caused these particular injuries. And also, with respect to the Crankle, quickly, Crankle, the new counsel can be denied if the matters pertain only to trial strategy. And here, whether to call an expert witness is quintessentially a matter of trial strategy. So, I mean, the defense calls it as, like, possible neglect, but I think the other part of the Crankle is that new counsel can be denied if it pertains to trial strategy. And here it is, most definitely, centrally, a matter of trial strategy which experts to contact, which experts to call at trial. And so that's why Crankle counsel was correctly denied. But with respect to the Lauer and Sperry cases on the first issue, when it's obvious that, like, a defendant discharged a gun, then the question becomes whether they did so knowingly or accidentally. That's not at all this situation. So they don't meet either the – they can't get past the trial strategy part, the objective reasonableness. They cannot get past the prejudice either because the evidence was overwhelming. And so for that reason, the defendant's attorney – I did want to say something, though, about the second issue with the conflict issue. And Justice Doherty, I think, had the question about what sort of prejudice. And just kind of in candor, if this court does find that it was prejudicial not to request the definition, but finds the evidence is not sufficient to understand why, then it could be postponed to post-conviction proceedings. But here there was a post-trial motion raising this issue. And so in that particular situation, perhaps then it could be remanded for further post-trial motions on the issue of why defense counsel did not – because if he had got a new attorney, for example, in this conflict issue, his new attorney could have called the old attorney and said, why did you not ask for this instruction? And then the old attorney could have said, yes, it was all strategic, or no, I was ignorant, or that could have been fleshed out in a post-trial proceeding if he got a new counsel and called him to testify in post-trial. If he doesn't get that, then, and this court does not resolve on, for example, lack of prejudice, then he would have to file a post-conviction petition in order to get this issue actually reviewed, because then he would be able to make a record. So then he could then put his attorney on the stand, the trial attorney, and ask him in a post-conviction petition context. So then I guess the question becomes, if this was not prejudicial, if this court says, yes, the evidence was overwhelming, a different instruction on knowing that IPI would not have made any difference, then I think that he also doesn't have any prejudice with respect to the actual conflict argument as well. But if there was prejudice on the first issue, then instead of requiring him to go to a post-conviction proceeding, then you could then remand for further post-trial proceedings on the conflict issue, because then it would be prejudicial. I think that's what the state's perspective of how the prejudice argument would play out. Because right now we don't know why the defense attorney did not ask for this instruction, so that would ordinarily kick it to post-conviction if it was prejudicial. But then he did raise this post-trial, so that at least is something. Very briefly on the last argument, which I don't believe the defense got to, but the instruction on reckless conduct, I think his claim is that because he's intoxicated when he picked up the child, that that somehow constitutes reckless conduct. But the state was saying this is not an included offense. He's charged with striking the child in the face. So if this is incidental or preparatory, it actually would constitute a separate offense, not an included offense of what was actually charged. So just simply identifying something the defendant did recklessly throughout the entire incident doesn't mean that he recklessly struck the child violently in the face. That is something that is not within the scope of the jury instructions, because that could not have been reckless. The injuries inflicted here could not have been inflicted recklessly. So I think he's trying to identify something else that he did and say that was reckless. But shifting to some other conduct that's not charged identifies a separate offense, not an included offense. And also under the Moore case, we don't even know who made the decision not to tender included offense obstructions for reckless conduct. And in the Moore situation, that has to be known, because it's not a matter for counsel to decide. It's for the defendant personally to decide whether to tender an included offense obstruction. But does counsel owe an obligation to counsel the client about those options? Yes. And we'd have to wait for PC to find out if that... In this situation, yes, Your Honor, because we don't know whether the consultation occurred, who made the decision, and that's why it would be under the Moore case, would have to be raised in post eviction. So for all those reasons, the State requests this Court affirm the conviction. And thank you, Your Honors. Thank you. Mr. Stein. May it please the Court. Counsel. Thank you. Further proceedings are necessary to ensure confidence in the outcome, especially in the jury instruction issue. Justice Lanard, you asked about the State's conduct during the hearing on that. Now, counsel never corrected the State. When the assistant State's attorney said, the definition of no only last dialogue, there is none. And no one state did not bring this up. Defense counsel never mentioned anything during the jury instruction. Had no clue. But didn't the judge say, yeah, I think there was something? He said, yeah, he did. But then counsel never looked at the IPI jury instruction. And while the State relies on an isolated line from Runyon saying that, you know, the definition of no only may be more onerous than the common law definition, that, first of all, in Runyon, that State is not supported by any case law. In fact, if it was, it's not supported by the IPI instruction. The State has not described what the common understanding is. In fact, the jury instruction requires conscious awareness of the result and everything. While, Justice Dougherty, you asked about two theories here, about one is accidental and one is not. Here, without clarification that no only has to be no only conduct and no only act, the jury here could have found, we don't know what the jury found, a no only accident. Was Cookson aware that his actions committed this accident? That would not fit the definition. That would be contrary to the defense. It would, in fact, undermine the defense strategy. Interesting enough, during the motion for new trial arguments, when this was raised in the motion for new trial, all the States said, I think, was some comment that, you know, this was in accordance with the, you know, the committee recommends this. They just kind of generally relied on the committee notes. And defense counsel did not correct it. To say that defense counsel knew about the instruction, which would be beneficial to the client. And there's no clear jury verdict finding that says, you know, we totally believe the State's expert and we totally do not disregard Cookson. The States here, because the jury was not properly instructed, the jury was likely to resolve all doubts, could resolve its doubts against the defendant, especially when an instruction requires consciously awareness. Again, this was the crux of the State's case. And regarding the lesser included instruction, I recognize that there was no concrete testimony regarding counsel's strategy. However, today, my client's sentence would either be complete or nearly complete as we stand here. In the defense bar, we call that a win, especially when you have these high stakes and these, this is why you have a lesser included. And Cookson did not describe a separate offense as the State is alleging. This wasn't an incident such as some of the State's cases where he testified to a prior beating. No, but it's basically a case that one side says I dropped him, the other side says you hit him. Those are two irreconcilable things. And isn't that really what the jury was asked to decide? The jury was asked to decide that and what was his knowledge and what was his mens rea at the time. I think if they accessed the dropping part, that is all wrapped up in it, isn't it? I mean, did you know that he was doing some act towards his son that could possibly result? And the jury had to answer that question, regardless of whether it's the accidental fall theory or whether it's the State's theory. The jury has to answer the main element of this case. And the lack of that, the lack of the proper jury instruction, this is why we have it, so juries can be properly informed. Not so they can rely on their common understanding. Juries are presumed to follow the instructions given to them. I hear the jury was never properly instructed. And I welcome the State's, I think the State conceded on the conflict issue that would be remanded for further post-trial proceedings, unless I'm incorrect. No, and for Cranko, the lack of a testifying expert raises questions of counsel's concrete investigation, especially when all counsel said your time has expired. So is that, it's enough that your time has expired?  All right, thank you. Thank you. All right, we will stand and recess and issue a decision in due course.